UNITED STATES OF AMERICA
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

DEON'TAE L. WILLIAMS                                          PLAINTIFF

v.                              CIVIL ACTION NO. 5:22-CV-P128-JHM

KYDOC et al.                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

*Pro se* prisoner Plaintiff Deon'tae L. Williams brought this 42 U.S.C. § 1983 lawsuit. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the Court dismisses some of Plaintiff's claims and allows others to proceed.

## I. STATEMENT OF CLAIMS

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), names as Defendants the Kentucky Department of Corrections (KYDOC); KYDOC Commissioner Cookie Crews; KSP correctional officers Seth Mitchell, Laura Plaupper, Lieutenant Kimberly Anderson, Justin Horne, Lieutenant Stephen Shafer, and Devon Canup; KSP Warden Scott Jordan; and KSP grievance coordinator Lauren Massey. All Defendants are sued in their official and individual capacities.

Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments and several sections (2, 3, 11, and 17) of the Kentucky Constitution. He requests declaratory relief, as well as compensatory and punitive damages.

The complaint (DN 1) contains allegations involving three discreet events at KSP. The amended complaint (DN 13) contains claims that Defendants Massey and Jordan retaliated

against him and violated Plaintiff's rights to due process and free speech.  Plaintiff's second amended complaint (DN 22) sets forth additional claims against Defendants Canup and Anderson.  The Court will set forth the pertinent allegations from the complaint and amended complaints in its discussion of the claims below.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

2

### III. ANALYSIS

### A.  Section 1983 claims

### *1. Claims against Defendants KYDOC and Defendants in their official capacity*

The Eleventh Amendment acts as a bar to Plaintiff's claim against the KYDOC.[1]  "The Eleventh Amendment 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments.'"  *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993).   Thus, "because Kentucky has not waived its Eleventh Amendment immunity and Congress has not abrogated state sovereign immunity under section[] . . . 1983," Plaintiff's claims against the KYDOC cannot proceed.  *Sefa*, 510 F. App'x at 437 (citing *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (recognizing that § 1983 claims against a state agency are barred by the Eleventh Amendment).  Plaintiff's claim against the KYDOC must also be dismissed because the KYDOC, as a state agency, is not a "'person'" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's official-capacity claims against Defendants for damages must be dismissed as well.  First, state officials sued in their official capacities for damages are absolutely immune from § 1983 liability under the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").  In addition, when a state official is sued in his official capacity for monetary damages, he is not a "'person'" subject to suit within the meaning of § 1983.  *Will*, 491 U.S. at 71.

---

[1] The Eleventh Amendment provides that "[T]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

The Court dismisses Plaintiff's claims against the KYDOC and the official-capacity claims against all Defendants for failure to state a claim upon which relief may be granted and for seeking monetary damages from a defendant who is immune from such relief.

### 2. Claims related to February 4, 2022 evacuation

Plaintiff's first claim concerns an evacuation of KSP on February 4, 2022, because of a fire.  Plaintiff states that he was taken to an outdoor recreation cage, where there was snow and ice on the ground and, he was told, it was 20 degrees.  He alleges that during the evacuation Defendant Plaupper ordered Defendant Mitchell "to evacuate everyone outside and 'if they look wrong spray their asses.'"  According to Plaintiff, "Defendant Plaupper was frustrated and obviously didn't care about policy, what she said went."  He further alleges that Defendant Mitchell was intoxicated.

Plaintiff alleges that once he was in the cage, an officer began to remove his mechanical restraints, but Defendant Mitchell ordered the officer not to do so.  Plaintiff states that when he began walking around the cage, Defendant Mitchell "ordered him to get in the 'kneeling compliance position.'"  According to Plaintiff, Defendant Mitchell kept him on his knees "for up to 2 hours in freezing cold weather and offered no sufficient cold-weather clothing."  Plaintiff also alleges that Defendant Mitchell used excessive force and that keeping him on his knees in the cold was cruel and unusual punishment.

Plaintiff states that he asked, given that the ground was covered in snow, "'Why can't I stand?'"  Defendant Mitchell then unholstered his taser, pointed it at him, and yelled, "'Get on your f***ing knees now!'"  Plaintiff states that he got in the kneeling compliance position, but commented, "'This is unnecessary,'" at which point Defendant Mitchell sprayed OC spray on his back "with no cause of an incident or disruption from the plaintiff."  Plaintiff alleges that he was

4

not acting disruptively or violating any prison rules when Defendant Mitchell used excessive force in spraying him while facing away from him in the kneeling position and in mechanical restraints.

According to Plaintiff, the spray got in his eyes "causing excruciating pain," and he asked Defendant Mitchell "to get medical" but Defendant Mitchell replied only, "'She's busy,'" and walked off.  Plaintiff alleges that this denial to see "medical" violated a prison policy which required medical review after a use of force.

*a. Cruel-and-unusual-punishment claim against Defendant Mitchell*

Plaintiff alleges that Defendant Mitchell ordered him to kneel for "for up to 2 hours" in freezing cold weather without sufficient cold-weather clothing.

The Sixth Circuit Court of Appeals has described the Eighth Amendment's prohibition on cruel and unusual punishment as follows:

> "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (quoting *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011)).  The Supreme Court has explained that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal citation omitted).

*Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1093-94 (6th Cir. 2019).

To state an Eighth Amendment claim requires satisfying both an objective and a subjective component.  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  "The objective component requires the pain inflicted to be 'sufficiently serious.'"  *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The subjective component requires that the prison official act with a

5

"sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297). "[W]hen a prisoner alleges excessive force, the subjective component requires a heightened showing that the prison official acted 'maliciously and sadistically for the very purpose of causing harm.'" *Rafferty*, 915 F.3d at 1094 (citations omitted).

It does not appear, and Plaintiff does not allege, that Defendant Mitchell had any responsibility for the fact that Plaintiff was outside in the cold weather without sufficient clothing. The Court, therefore, considers only whether Defendant Mitchell's order to kneel on the snow and ice covered ground for up to two hours, prompted only by Plaintiff's walking around the cage, could be considered an unnecessary, wanton infliction of pain in light of the cold and his inadequate clothing.

While it may be that further development will show that requiring Plaintiff to assume the kneeling compliance position despite the ice and snow on the ground was not without penological justification, the Court allows this claim against Defendant Mitchell to continue.

*b. Excessive-force claim against Defendant Mitchell*

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain by state actors. To establish liability on this basis, a plaintiff must allege that the force used against him was objectively serious and inflicted to cause harm rather than for the good-faith purpose of maintaining prison discipline. *Williams*, 631 F.3d at 383.

The complaint plausibly alleges that Defendant Mitchell sprayed Plaintiff with OC spray, while in mechanical restraints in a "cage" and in the kneeling compliance position without provocation, and for no good-faith disciplinary purpose, which is sufficient to state a claim that survives the screening phase under § 1915A. The Court will allow this excessive-force claim against Defendant Mitchell to continue.

*c. Denial-of-medical-treatment claim*

Plaintiff fails to state a § 1983 claim against Defendant Mitchell for denial of medical treatment after being sprayed in violation of prison policy. *See, e.g.*, *Williams v. Thomas*, No. 116CV01330, 2019 WL 1905166, at *5 (W.D. Tenn. Apr. 29, 2019) ("[T]he violation of a prison regulation is not actionable under § 1983."); *Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) ("Merely failing to follow a particular administrative rule does not constitute a violation of the constitution.").

In light of Plaintiff's *pro se* status which requires the Court to read the complaint liberally, the Court also considers whether Plaintiff states a claim under the Eighth Amendment. The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" may constitute the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (quotation marks and citation omitted); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). An Eighth Amendment deliberate indifference claim "includes objective and subjective aspects: (1) a substantial (objective) risk of serious harm and (2) the official's (subjective) knowledge and disregard of that substantial risk." *Brown v. Clark*, No. 3:22-cv-21, 2022 WL 3355805, at *2 (W.D. Ky. Aug. 12, 2022) (citing *Farmer*, 511 U.S. at 834). "Deliberate indifference 'entails something more than mere negligence' . . . [, *i.e.*, it requires] actual awareness of the substantial risk." *Id*. at *2 (quoting *Farmer*, 511 U.S. at 835).

Courts have held that "the effects of OC spray, standing alone, fail to indicate an objective, 'sufficiently serious' medical need giving rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to decontaminate." *Woodard v. Winters*, No. 2:16-CV-704, 2018 WL 3020336, at *11 (S.D. Ohio June 18, 2018) (and cases

cited therein), *report and recommendation adopted*, No. 2:16-CV-704, 2018 WL 4610511 (S.D. Ohio Sept. 26, 2018).  Here, Plaintiff does not allege that he had no access to soap and water, but his circumstances (in a cage outside with his hands behind him in restraints) make it likely.  For purposes of this initial review, the Court holds that he has satisfied the objective prong.

Reading the complaint liberally, Plaintiff relayed to Defendant Mitchell that the OC spray was in his eyes and was causing him "excruciating pain," yet Defendant Mitchell did not alert medical staff.  And since Plaintiff does not indicate that Defendant Mitchell offered him soap and water with which to decontaminate, the Court allows an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Mitchell to continue.

### d. Claim against Defendant Plaupper

Plaintiff alleges that during the evacuation Defendant Plaupper ordered an allegedly intoxicated Defendant Mitchell, although Plaintiff does not allege that she knew of his inebriation, "to evacuate everyone outside and 'if they look wrong spray their asses.'"  *Id*. at DN 1, p. 5.  According to Plaintiff, "Defendant Plaupper was frustrated and obviously didn't care about policy, what she said went."  *Id*.  He asserts that she violated the Eighth Amendment by giving a "malicious" order to Defendant Mitchell to carry out; that she witnessed his illegal actions; and that she failed as a Deputy Warden to correct him, thereby encouraging him.  *Id*. at 22.

The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel.  *See, e.g.*, *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)).  "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged

unconstitutional activity of a subordinate." *Id*. (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Reading the complaint liberally, Plaintiff's allegation that Defendant Plaupper, who as Deputy Warden appears to outrank Defendant Mitchell, ordered Defendant Mitchell, "to evacuate everyone outside and 'if they look wrong spray their asses'" has stated a supervisory liability claim against Defendant Plaupper for allegedly authorizing Defendant Mitchell's subsequent use of excessive force during the evacuation. *See, e.g.*, *Foster v. Graves*, No. 3:22-CV-00017, 2022 WL 164542, at *3 (M.D. Tenn. Jan. 18, 2022) ("[T]he specific nature of the threat—that [prison] staff would use unnecessary [force] against prisoners—along with [Chief] Thomas's order to "strip, search, and destroy" Plaintiff's cell, is sufficient to "plausibly allege that [Thomas] 'did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.'") (citations omitted)).

### 3. Claims related to March 12, 2022 incident

Plaintiff claims on March 12 that he was awakened by Defendants Anderson and Horne, who came to his cell to confiscate his mattress and any contraband. Plaintiff alleges that after Defendant Anderson secured Plaintiff in mechanical leg and wrist restraints, she told Plaintiff to remove the hair tie from his hair, to which Plaintiff responded, "'Okay, I don't care.'" Plaintiff explains that in order to follow the order to remove the tie, he would have to be free from restraints; therefore, he asserts, "he never refused the order, Defendant Anderson only took it that way." Plaintiff states that Defendant Anderson nodded at Defendant Horne who then tried to remove the tie from his hair, but Plaintiff moved away from him. Plaintiff alleges that Defendant Horne then grabbed the tie and pulled on it to remove it, which tugged Plaintiff's "dread locks

from the root causing him pain," and which Plaintiff believed was done deliberately.  Plaintiff states that Defendant Horne succeeded in getting the hair tie out.

Plaintiff alleges that he could not keep up with to Defendant Horne when he escorted him to his cell due to the restraints on his legs.  Plaintiff further alleges that Defendant Horne believed Plaintiff was resisting and "tossed" Plaintiff, whose hands were restrained behind his back, "to the ground in a very dangerous way."  Plaintiff asserts that Defendant Horne held him on his stomach "in order to restrain him to keep him from resisting [but] at this point[,] [P]laintiff was NOT resisting what so ever."  He asserts that Defendant Anderson "immediately ran from where she was . . . and knowingly placed her taser in the center of Plaintiff's back and wantonly tased Plaintiff while saying 'Stop resisting' [even though] [i]t was very clear that Plaintiff . . . was not resisting."  Plaintiff also states that he heard that during the prior shift change, Defendant Horne made the comment, "'There's no rules today.'"

*a. Hair tie*

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks and citation omitted)).

Plaintiff admits that when Defendant Horne tried to remove the tie from his hair he moved away from him and, at that point, Defendant Horne grabbed the tie and pulled on it to get it out, which tugged Plaintiff's "dread locks from the root causing him pain."

The Court holds that Plaintiff does not state an Eighth Amendment claim based on the removal of his hair tie.  Plaintiff's allegation that Defendant Horne's removal of the hair tie

tugged on his dread locks is *de minimis* and not "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (citation omitted).  *Compare Kelly v. Labelle*, No. 2:20-CV-49, 2020 WL 3286794, at *4 (W.D. Mich. June 18, 2020) (holding that allegation of being punched and having a dreadlock torn out causing scalp bleeding stated Eighth Amendment claim).

### b. Thrown to the floor

According to Plaintiff, Defendant Horne "tossed" him to the ground and restrained him there because he believed that Plaintiff was resisting being taken back to his cell.  "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'"  *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004).  Plaintiff alleged that Defendant Horne believed that Plaintiff was resisting; Plaintiff, therefore, has not alleged that Defendant Horne acted with a sufficiently culpable mind.  The Court dismisses this claim for failure to state a claim upon which relief may be granted.

### c. Tasing

Plaintiff alleges that while he was in restraints and on his stomach being held down by Defendant Mitchell, Defendant Anderson "knowingly . . . and wantonly tased Plaintiff."  DN 1, pp. 9-10.

Accepting Plaintiff's allegations as true, Plaintiff alleges that Defendant Anderson's use of the taser was gratuitous, and "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema v. Benzie Cnty.*, 146 F. App'x 28, 35 (6th Cir. 2005).  The Court allows this claim to continue against Defendant Anderson past initial review.

### *4. Claims related to August 2, 2022 incident while on mental-health watch*

The incidents surrounding Plaintiff's third claim occurred on August 2, while he was housed in segregation on a mental-health watch. Plaintiff states that he was awakened by Defendant Canup, who was the "watch officer," and another inmate arguing. Plaintiff and Defendant Canup exchanged words, and then "out of anger [P]laintiff got up [and] took his boxers off;" at this point Defendant Canup "got his mace can and shook it up while moving quickly towards plaintiff[']s cell" and yelled for Plaintiff to put his boxers on.[2] Plaintiff states that he did; that when Defendant Canup ordered him to get in the kneeling compliance position, he complied; and that he also subsequently laid on his stomach as instructed by a non-Defendant sergeant.

Plaintiff alleges that Defendant Shafer then came in, and when asked by Plaintiff how long would he have to stay on his stomach, answered "hatefully 'until next shift' which was at least 10 hours away." *Id.* Plaintiff states that when he asked Defendant Canup if he seriously meant to keep him that way for 11 hours, he "sarcastically said 'Yup.'" Plaintiff alleges, "This act was cruel and unusual and started cause Plaintiff took his boxers off. Plaintiff wasn't settling for abuse of power so he got up and Defendant Canup ran towards his cell and sprayed him." Plaintiff contends that the only proper reason to use force in mental-health segregation is when a prisoner assaults a staff member or engages in self-harm.

Plaintiff alleges that after he was sprayed he was taken to decontaminate, but decontamination consisted only of a pitcher of water being dumped on him, even though at other prisons inmates are allowed to shower. Plaintiff states that he experienced a "burning sensation on his genitals and buttocks." He further states that he was given soap, but Defendant Canup refused to give him a washcloth. So, Plaintiff explains, he used his boxers as a washcloth and

---

[2] It appears that boxers were the only article of clothing Plaintiff had been wearing.

then threw them out of the cell and asked Defendant Canup for a new pair. According to Plaintiff, Defendant Canup refused, and when Plaintiff "began to argue and plead his case and told Defendant Canup he still ha[d] to give him something to cover his naked body," Defendant Canup refused even though a female correctional officer could see the now-naked Plaintiff.

Plaintiff states that after he tired of arguing he began walking around in his cell, still nude, and then noticed Defendant Canup "staring at his genital area." This prompted Plaintiff to tell Defendant Canup to give him something to put on, but Defendant Canup refused. Plaintiff states that he queried Defendant Canup, "'What kind of man wants to sit here and look at another man's ass?'" to which Defendant Canup responded, "'So it's okay for you to look at my ass, but I can't look at yours?'" Plaintiff asserts that this comment upset him and that he told Defendant Canup that he wanted to file a "PREA [Prison Rape Elimination Act]" but he was denied. At this point, according to the complaint, a female officer radioed Defendant Shafer and asked for a pair of boxers for Plaintiff, but Defendant Shafer replied, "'No!'" When Plaintiff saw Defendant Shafer, Plaintiff told him he would like to file a "PREA," but Defendant Shafer just walked off. Plaintiff states that he was not given a pair of boxers until the psychiatrist made his rounds.

Plaintiff alleges that Defendant Shafer violated his right to file a PREA complaint "because he never made an effort to investigate the situation or notify the proper authorities." He also alleges that Defendants Canup and Shafer violated his Eighth Amendment rights due to the sexual harassment he encountered.

a. *Excessive-force claim for being sprayed*

It is clear from the complaint that Plaintiff initiated the confrontation when he took off his boxers "out of anger," although he complied when told to put his boxers on, kneel, and then lay on his stomach. But when he was told "hatefully" and "sarcastically" that he would have to

13

stay that way until the shift ended, he got up without permission, at which point, Defendant Canup sprayed him.  Plaintiff asserts that the only proper reason to use force in mental-health segregation is when a prisoner assaults a staff member or engages in self-harm.

Guards may use force without violating the Constitution when a prisoner does not comply with orders.  *Roberson*, 770 F.3d at 406; *Jennings*, 93 F. App'x at 725.  Plaintiff offers no authority for his contention that guards may not do so when a prisoner is on a mental-health watch.  It may be that there is a KSP rule or policy to that effect, although Plaintiff does not point to such a rule or policy.  In any event, simply violating a prison rule or policy is not a constitutional violation.  *See, e.g.*, *Williams*, 2019 WL 1905166, at *5.

While it may have been malicious to tell Plaintiff that he would have to be there until the end of the shift, Plaintiff's allegation that Defendant Canup replied "Yup" sarcastically, suggests that it was not reasonable to believe that he would be made to lie on his stomach until the end of the shift.  Regardless, it is clear that Plaintiff was sprayed because he got up without permission and in violation of Defendant Canup's order to remain on his stomach.  As such, the Court dismisses this claim for failure to state a claim.

### b. Sexual-harassment claim

Plaintiff claims that Defendants Canup and Shafer violated the Eighth Amendment by subjecting him to or failing to protect him from encountering sexual harassment.

Although severe, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment, *Rafferty*, 915 F.3d at 1096, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a

search, fall short of an Eighth Amendment violation), *abrogated by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that an offer of sexual favors was not sufficient to state Eighth Amendment claim); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse].") (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)).

Plaintiff alleges one incidence in which Defendant Canup "stared" at Plaintiff's genital area and made a sarcastic retort to Plaintiff when Plaintiff called him out about it.  Such an "isolated, brief, and not severe" encounter cannot state a sexual-harassment claim against Defendant Canup.

Plaintiff alleges no sexually harassing behavior by Defendant Shafer, and he does not state an Eighth Amendment claim against him merely based on his refusal to investigate his PREA claim.  *See Cox v. Nobles*, 15 F.4th 1350, 1361-62 (11th Cir. 2021) (rejecting argument that a "violation of the PREA violates the Eighth Amendment *per se*").  The Court dismisses these claims against Defendants Canup and Shafer.

### c. Claim for being kept naked

Plaintiff alleges that it was cruel and unusual punishment to deny him boxers, leaving him naked.  The Court notes that "under certain circumstances, the invasion of an inmate's bodily 'privacy' can violate the inmate's Eighth Amendment rights."  *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 757 n.26 (6th Cir. 2004); *see also Kent v. Johnson*, 821 F.2d 1220, 1227-28 (6th Cir. 1987) (holding that inmate had stated a claim under the Eighth Amendment by alleging that "female prison guards have allowed themselves unrestricted views of his naked body in the

shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy").

The Court, however, holds that no constitutional violation took place here because what Plaintiff describes was "isolated, brief, and not severe." *Jackson*, 158 F. App'x at 662; *McManus v. Ky. Dep't of Corr.*, No. 3:20-CV-P116-DJH, 2020 WL 1866188, at *4 (W.D. Ky. Apr. 14, 2020) (having to change clothes in front of other inmates, which plaintiff believed was designed to "'humiliate, degrade, and belittle'" was "'isolated, brief, and not severe'") (citation omitted); *Hernandez v. Martinez*, No. 1:10-cv-01064, 2013 WL 6838682, at *4 (E.D. Cal. Dec. 20, 2013) (no constitutional claim where female official watched the plaintiff put on his underwear on one occasion). The Court dismisses Plaintiff's claims related to being left naked against Defendants Canup and Shafer.

   *d. PREA claim*

Plaintiff's claim based on an inadequate PREA investigation fails to state a constitutional violation. *See Jackson v. Wicking*, No. 3:20-CV-00249, 2020 WL 6874963, at *2 (M.D. Tenn. Nov. 23, 2020) (no constitutional right to compel a proper investigation of a PREA complaint or even to have that complaint investigated at all); *Jacoby v. PREA Coordinator*, No. 5:17-cv-00053, 2017 WL 2962858, *4 (N.D. Ala. Apr. 4, 2017) (explaining that "[t]he failure to investigate the plaintiff's [PREA] claims in a manner satisfactory to the plaintiff is not a constitutional violation," and "[w]hether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created"), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017); *see generally Buchanan v. Metz*, 6 F. Supp. 3d 730, 758 (E.D. Mich. 2014) (explaining that the Sixth Circuit has not recognized a due-process claim based on the way an investigation was initiated, planned, or executed). The Court dismisses this claim.

16

### *5. Claims related to January 8, 2023, incident*

In Plaintiff's second amended complaint (DN 22), Plaintiff alleges that on January 8 he was moved to a cell that was contaminated with O.C. spray, so he kicked the door to get officers' attention. Defendant Canup told him, "Now you['re] going on property restrictions," and he and Officer Nielson approached him with "O.C. spray drawn" and ordered Plaintiff to "cuff up." Plaintiff states that he asked, "What did I do?" prompting Defendant Canup to spray him, but the O.C. spray malfunctioned. After Plaintiff was in restraints, he was escorted "with a fast pace." He states that he "stopped to get in pace with a normal stride," which the officers took as resisting and Defendant Canup tased him, causing Plaintiff to drop to his knees. According to Plaintiff, Defendant Canup then took him all the way to the ground, injuring Plaintiff's knee. Plaintiff states that he told the officers, " I can't feel my leg. I need medical," but was ignored. He states that Defendants began to drag him, but then called in a "move team" to escort him off the walk.

Plaintiff states that after this incident Defendant Canup maintained that Plaintiff assaulted him and Officer Nielson which prompted the use of force, including the tasing. There was an investigation and a hearing, during which Officer Nielson stated that he did not recall being struck but that there was blood on his lip. Plaintiff states that he was convicted of assault, but the warden amended it to "resisting arrest." Plaintiff claims that excessive force was used and that Defendant Canup "makes reprisals against him."

Plaintiff admits to kicking the cell door, talked back to officers, and stopping while he was being escorted. He has not stated a claim that Defendant Canup used force that was excessive in the situation he describes or that it was prompted by a desire to retaliate. Additionally, Plaintiff merely alleges that he asked for "medical" but was ignored while the

officers were in the process of restraining him and moving him off the walk.  The Court finds that Plaintiff has not stated a claim for excessive force, retaliation, or deliberate indifference to a serious medical need.

### 6. Claims related to January 29, 2023, incident

According to Plaintiff, on January 29, Defendant Anderson came to his cell to investigate Defendant Canup's disciplinary report related to the alleged assault on January 8.  Plaintiff states that she read the description of the incident report and asked him if he wanted to call any witnesses.  According to the Plaintiff, he became frustrated when he was told that there were no cameras recording where the incident took place and challenged Defendant Anderson's ability to investigate over what he perceived as her bias.  During that time, Plaintiff admits that he refused her order to sit on the bed.  Defendant Canup then arrived with his O.C. spray in hand, ordered Plaintiff to get in the "prone compliance" position and, when Plaintiff did not move quickly enough, sprayed Plaintiff in the back.  Plaintiff states that he believes that it was unnecessary to be sprayed and that his right to due process was violated, presumably by Defendant Anderson's investigation.

Again, Plaintiff's own allegations indicate that he was verbally challenging Defendant Anderson and had refused her command when Defendant Canup arrived and that he did not quickly get in the compliance position as ordered by Defendant Canup when Defendant Canup sprayed him on his back.  The Court finds that Plaintiff has not alleged an excessive-force claim here.  *See Williams*, 631 F.3d at 383.

As to his due-process claim, an inmate's due-process rights are protected where he "received notice, presented evidence, and had the ability to call witnesses," *Guile v. Ball,* 521 F. App'x 542, 544 (6th Cir. 2013); *see generally Wolff v. McDonnell,* 418 U.S. 539 (1974), and

Plaintiff admits he received notice and was asked if he wanted to call witnesses. He apparently wanted to present video footage of what happened and was angry that there no cameras where the incident took place. However, nothing suggests that Defendant Anderson was responsible for the lack of cameras in that area of the prison or that he was not otherwise able to present evidence in his defense. Plaintiff, thus, fails to state a due-process claim.

### 7. Claims against Defendants Massey and Jordan

In Plaintiff's amended complaint, Plaintiff brings retaliation, due process, and freedom of speech claims against Defendants Massey and Jordan. Plaintiff alleges that Defendants Massey and Jordan used false disciplinary reports to deny grievances, thereby denying Plaintiff a chance to have a hearing on his grievance. And he alleges that Defendant Massey did not provide him a chance to exhaust his grievance because she answered his appeal to Defendant Jordan. He also alleges that Defendant Massey violated his due-process rights by "not giving him a chance to exhaust his remedies." He further alleges that Defendant Jordan "almost always concurs with Defendant Massey's rejection."[3] He also alleges that "hindering the grievance investigation [and] den[ying] . . . a grievance hearing . . . violated Plaintiff's . . . 1st Amendment freedom of speech right to be heard."

#### a. Retaliation

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct, (2) a defendant took an adverse action against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) the protected

---

[3] The original complaint also made claims against Defendants Massey and Jordan. The Court considers only the amended complaint because it supersedes the original complaint with regard to his claim against Defendants Massey and Jordan. *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009); *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes.") (quotation and citation omitted).

conduct motivated the adverse action, at least in part. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Under the *Thaddeus-X* framework, courts generally treat the filing of a non-frivolous prison grievance or lawsuit as constitutionally protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "[P]rotected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf'" but only if the grievance is not frivolous. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron*, 203 F.3d at 415). For purposes of this initial review, the Court holds that Plaintiff has alleged that he was engaged in protected conduct.

Plaintiff's retaliation claim, however, fails on the second prong: adverse action that would deter a person of ordinary firmness from engaging in that conduct. The adverse action Plaintiff points to – the rejections and denials of his grievances – is not an adverse action for purposes of a retaliation claim. "Refusing to process a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences. Prisoners do not have a right to an effective grievance procedure, and they suffer no consequences for filing a grievance that is not processed." *Cameron v. Gurnoe*, No. 2:19-cv-17, 2019 WL 2281333, at *5 (W.D. Mich. May 29, 2019) (and cases cited therein); *see also Smith v. Otto*, No. 1:22-cv-1028, 2023 WL 2071485, at *6 (W.D. Mich. Feb. 17, 2023) ("Many courts . . . have held that the denial or refusal to process a grievance is not an adverse action.") (and cases therein); *McCain v. Farrar*, No. 2:20-cv-3164, 2020 WL 9174851, at *6 (S.D. Ohio Aug. 24, 2020) ("Denial of a grievance is not a sufficiently adverse action to state a retaliation claim."). Consequently, the Court dismisses Plaintiff's retaliation claim for failure to state a claim.

*b. Due process*

Plaintiff's due-process claim fails to state a claim upon which relief may be granted because prisoners do not possess a constitutional right to a prison-grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."). Consequently, "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) (citing cases). "Further, if the prison provides a grievance process, violations of its procedures . . . do not rise to the level of a federal constitutional right." *Weddle v. Dunbar*, No. 1:15CV-P9-GNS, 2015 WL 2213356, at *5 (W.D. Ky. May 11, 2015) (citing *Walker*, 128 F. App'x at 445). The Court, therefore, dismisses Plaintiff's claim related to due process.

*c. Freedom of speech*

The only allegation related to freedom of speech Plaintiff makes is that "hindering the grievance investigation [and] den[ying] . . . a grievance hearing . . . violated Plaintiff's . . . 1st Amendment freedom of speech right to be heard."

The right to file a grievance stems from the First Amendment right to free speech and to petition the state for redress of grievances. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996); *see also Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Plaintiff did file grievances. But, as stated above, Plaintiff does not have "a constitutional right to an effective prison grievance procedure." *Argue*, 80 F. App'x at 430. The Court, therefore, also dismisses this claim.

### *8. Commissioner Crews*

Plaintiff makes no allegations against Defendant Crews in her individual capacity.   He, therefore, fails to state a claim against her.   *See, e.g.*, *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

### B. State constitutional claims

Plaintiff alleges violations of Sections 2, 3, 11, and 17 of the Kentucky Constitution. Kentucky law, however, is clear that the Commonwealth's Constitution provides no direct private right of action for damages based on violations of state constitutional law.   *See Shepherd v. Univ. of Ky.*, No. 5:16-005-KKC, 2016 WL 4059559, at *3 (E.D. Ky. July 28, 2016) ("Kentucky does not recognize a private right of action for alleged violations of the state Constitution."); *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011) (declining to recognize a new cause of action for money damages based on state constitutional violations). Nor may § 1983 be used as a statutory vehicle to vindicate state constitutional claims.   *See Tallman v. Elizabeth Police Dep't*, 344 F. Supp. 2d 992, 997 (W.D. Ky. 2004).   Accordingly, Plaintiff's claims under the Kentucky Constitution fail as a matter of law, and the Court dismisses these claims.

### IV. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the claims against KYDOC and all Defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2) for failure to state a claim

upon which relief may be granted and for seeking monetary relief from Defendants immune from such relief.

**IT IS FURTHER ORDERED** that the individual-capacity claims against Defendants Horne, Canup, Shafer, Massey, Jordan, and Crews, his due-process claim against Defendant Anderson, and his state-law constitutional claims, are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court **DIRECTS** the Clerk to **terminate** KYDOC, Horne, Canup, Shafer, Massey and Jordan, as parties to this action.

The Court will enter a separate Service and Scheduling Order to govern the development of the continuing claims, *i.e.*, the individual-capacity claims against Defendants Mitchell and Plaupper and the claim against Defendant Anderson related to tasing.

Date:  May 22, 2023

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants Mitchell, Plaupper, and Anderson
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.009